## WINTHROP S. BAKER & another *vs.* JACOB W. CROSBY.

A right of way of necessity ceases by acquiring another right of way over the land of its owner to the same highway, and is not revived by conveying away that land.

Evidence that for more than twenty years there has been a well defined travelled way with ruts visible in some parts, though not so worn by travel as to prevent the growth of grass, leading from the gate of a house lot across a meeting-house green to the highway, with no other ready and convenient access to the house, is sufficient evidence of a way by prescription to be submitted to a jury.

ACTION OF TORT for breaking and entering the plaintiff's close in North Bridgewater, and with horses and carriages passing

Baker & another *v.* Crosby.

over the same.   Answer, a right of way over said land from the main street to lands of the defendant.

At the trial in the court of common pleas before *Bishop, J.,* the plaintiffs introduced evidence tending to show possession by the First Parish in North Bridgewater of the Meeting-house Green, so called; a lease from that parish to the plaintiffs of the southernmost half of that green; and the trespasses complained of on the part so leased; and then rested their case.

The defendant introduced evidence tending to show that all the defendant's acts were done in the rightful use and enjoyment of the right of way claimed in his answer; and, in proof of such right of way, gave in evidence a deed, dated January 13th 1745, from Lydia Packard to John Porter of the lands marked " Porter " on the plan in the margin,* " with all the appurtenances thereof; " an instrument in writing from Porter to Packard of the same date, purporting to bind him and his heirs " to allow of a drift way through the southerly end of my land on which my house stands forever, and maintain the gates at the end; " deeds from Mary Ames in 1756, and from Israel Sylvester in 1759, to Porter, of the lots respectively marked " Ames " and " Sylvester " on the plan; and deeds in 1792,

from Porter, of the "Sylvester" and the southerly part of the "Ames" lot to John Crafts, and the residue of the "Ames" lot to Thomas Crafts, both of whom conveyed them away in Porter's lifetime.

The defendant also offered evidence that Porter died intestate in 1802, in occupation of the land conveyed to him by Lydia Packard, and also of the lot marked "3" upon the plan; and his heirs conveyed their title in all said lands to John Crafts, who died in 1849, and by his will devised the southeasterly lot on which the house stood (as shown on the plan) to the defendant's minor daughter, and the residue to the defendant's wife and another whose rights she had since acquired.

It appeared that Main Street was an ancient way, formerly known as the Old Bay Path; that Spring Street, as shown on the plan, was laid out about thirty years ago; that in 1851 a highway called Pleasant Street was laid out from Main Street by the northern boundary of the Meeting-house Green, and over the southwesterly corner of the Sylvester lot, and thence in a northwestwardly direction, across the "Porter" land and the southwesterly corner of lot "3," to Spring Street; and that the defendant in 1852 laid out a private way from the Meeting-house Green westwardly, and to the north of the "Porter" house, according to the dotted lines on the plan, and leading to the lands described in his answer.

The defendant also introduced evidence that the "Porter" House was an ancient house, having upon a tile in the chimney "1743" or "1745;" that the outbuildings were apparently as old as the house; and there were ancient gates and bars opening from the house lot into the Meeting-house Green, which were there in Porter's life, and had since been kept and maintained by Crafts. There was also evidence that from beyond the memory of man the green was fenced on all sides except towards the east, and on that side remained open until 1855.

There was also evidence tending to show that Porter, and after him Crafts until 1849, lived in the "Porter" House, and occupied the Porter Farm, and, together with their families, servants

and all persons having communication with them, at all times as occasion required, passed and repassed through the largest of said gates over the green to Main Street, in a well defined travelled way, with ruts in some parts, more or less visible during the whole year, and particularly visible in the spring, but not so much worn by travel as to prevent the growth of grass ; that they also passed through the different gates and bars into the green, for the purpose of going to and from their barn and yard, of driving cattle to and from pasture, and of cultivating the southern part of their land ; and also that the green had always been used as a training field and playground, so far as its surface permitted, and all persons who chose passed over it in such directions as they pleased.

The defendant also introduced evidence tending to show that the land south of the way laid out by the defendant, and of the right of way claimed by him across the plaintiff's lot, was impassable with carriages ; that the lands conveyed by Sylvester and Ames to Porter were at the time of such conveyances so rocky and uneven as to be very inconvenient to travel over with teams or carriages without removing the stones and levelling the surface of the ground ; and that to pass over those lands would be a circuitous and longer route than by the way claimed by the defendant.

*Bishop*, J. instructed the jury that the evidence did not justify the defendant's entry upon the plaintiffs' close ; a verdict was taken for the plaintiffs, and the defendant alleged exceptions.

*A. L. Cushing & W. P. Field*, for the defendant.

*J. J. Clarke & J. White*, for the plaintiffs.

BY THE COURT. There is no evidence of a right of way by grant or necessity ; for it does not appear that Lydia Packard ever owned the Meeting-house Green ; and if Porter ever had a way of necessity over it, he subsequently acquired other land, bounding on the land granted to him by Packard, and on a public way, which removed the necessity. *Nichols* v. *Luce*, 24 Pick. 102. *Holmes* v. *Goring*, 2 Bing. 76, and 9 Moore, 166. Woolrych on Ways, 71.

But there was evidence tending to show a way of prescrip-

Baker & another *v.* Crosby.

tion. Such were the facts, that there was no other ready or con-venient access; that the house stood there at the time of the deed to Porter in 1745, and its occupants had since used the way claimed; that there were gates opening into the green, and a regular track from the principal gate to the main street, indicating a peculiar and exclusive use. This evidence should have been submitted to the jury. *Exceptions sustained.*

# CASES

# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1857,
## AT DEDHAM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. BENJAMIN F. THOMAS,  } Justices.
Hon. PLINY MERRICK,